May it please the Court. I'm just going to give just a brief recap without repeating everything in my brief. I don't have a whole lot to add, but there are some points that I want to stress. And actually, the more that I was thinking about this case in preparation for today, the more I thought that I should have probably stressed in my briefing the importance of the appeal waiver and the right to counsel. There was nothing in the record in this case that indicates that there was a valid waiver of the right to counsel. As you know from reading the briefs, the facts are pretty much not disputed other than some Mr. Buenteos' past, but he was a lawful permanent resident since age five. He came to this country at age five and he was a migrant laborer with his family. He ended up graduating high school in Michigan. He was on the football team. He went into the military. He tried his best to assimilate into American culture. He ended up deserting the military. He was given an other than honorable discharge and that pushed him into a depressive state and he started drinking a lot. And that's the circumstances in which he began committing these offenses, which I consider pretty petty offenses, but with the change in immigration laws, many of these are now considered aggravated felonies. He does not have any criminal history involving drug dealing, a lot of conduct that we often see in these 1326 cases where people are aggravated felons. So what happened with Mr. Buenteos is he racks up this record and one of his convictions is he pleads guilty to before the enactment of the IIRIRA. That's the Illegal Immigration Reform and Immigrant Responsibility Act. And that law actually went into effect one week after he was sentenced. Because this is so old, it's unclear from the A-file exactly when he pleaded guilty in that case, but I think it's undisputed that it was before the enactment of that law that made that offense an aggravated felony. Just so that I've got this straight, the plea was after the enactment of the IIRIRA? No, the plea predates the enactment. Or it's effective date? It's effective date. It's after the enactment. This is important. It's after the enactment. It's on the books. It has not yet taken effect, but it clearly says it's going to have retroactive effect, right? Well, like I said, it's unclear from the record in the case one he entered the plea. But you would be correct. Is there any doubt that it was after enactment of the IIRIRA and before its effective date? Your Honor, if I can have a moment to check, I can answer that. Please. Okay. So, the enactment was September 30th of 1996. And there's an NCIC that reflects that he was convicted on March 25th, 1997. Okay. And that's the assumption that I'm working from as well. Okay? Okay. So, my question is, given the hypothesis of your case, as I understand it in essence, is that he thought at the time he pled guilty that he could have relied upon potential availability of 212C waivers, right? Right. I don't know if he knew anything about it, frankly, when he did that. But that's the hypothesis. That's partly the legal fiction of St. Cyr, right? Right. But this is after IIRIRA has been enacted with clear retroactive language. Where would there be reliance in March of 1997? If, to answer your question, I agree. Our issue is moot if he was actually, if he entered his plea after the enactment. Even if it was before the effective date? Well, and that's where I would disagree. And my argument is that it wasn't. Well, okay. That's what I'm trying to focus on. Because if it's on the books, if it's known that Congress is going to, has enacted this law that is going to take effect and will apply retroactively to earlier convictions, how do we get the St. Cyr reliance in that case? Well, and my argument is that it wasn't known to Mr. Larios-Polentaio. And that's where the whole right to counsel and, you know, just the... You're not saying he didn't have counsel in his guilty plea? He did, as far as I know, he had counsel, from what he tells me. Okay. All right. Can I ask a couple of other questions? At the time of his removal in 1998, I understand you're objecting to his waiver of his right for further appeal, that he didn't have counsel. What advice do you think U.S. authorities were required to give him back in 1998? Same advice as I think people should get when they're facing serious deprivations, including deportation. Which is? The right to counsel, the consequences of waiving an appeal, the right to any relief. Okay. But, I mean, in essence, my notes to myself are that the agency is supposed to tell him, in essence, we don't think you have any hope, but perhaps the Supreme Court might disagree, right? You could be Mr. St. Cyr. Is that what they're supposed to tell them? I'm sorry, can you repeat that, Your Honor? Well, at the time he was being removed, 212C had been repealed. The agency was consistently taking the approach that that repeal would apply to folks who had entered their guilty pleas earlier in reliance, either fictional or actual, upon the availability of 212C. St. Cyr had not been decided. Are they supposed to give him advice about his chances on appeal of his removal order? No, I'm not saying that. Okay. Okay. Should I continue? Of course. Thank you. You're into rebuttal time, but... Oh, okay. Well, you know, just quickly, when evaluating the three prongs, well, this circuit has not, I think, definitively decided whether all three prongs must be met for someone to prevail on a collateral challenge. But I think the most important one, you know, from the one that I want to highlight, is the second prong, and that's that the deportation proceeding in this case improperly deprived Mr. Larios Buenteo of his opportunity for judicial review. And I'll wait for my rebuttal. All right. Thank you, Mr. Dyer. Mr. Jarosz? Thank you. Peter Yarrow for the United States. Just to clear something up, and I misunderstood the defense counsel's argument, but there's a right to have an attorney at an administrative proceeding for removal. It's just the government isn't going to pay for one if you can't afford it. He certainly could bring one, so there can't be sort of a denial of counsel in that particular case. Your Honor, the government's belief is that the defendant fails to satisfy any of the three requirements to seek that sort of attack on the prior order of deportation, unable to show that he exhausted administrative remedies or that he was improperly denied judicial review or that somehow anything was fundamentally unfair. He was at the administrative hearing. The defendant waived the appeal rights. We know that from the record of the order of deportation. And at that point, I think the fair inference is that if you're going to waive that and it's going to be done in that manner, that he was advised of his right to appeal. But even if he had not been advised of that, this court has ruled on several occasions that it is no error, due process error, for the court to fail to advise him of his right to appeal a discretionary relief. And so as a result, it really is of no instance here. What the defendant argues in his brief is that there was some unnamed immigration agent that told him, look, your chances of appeal are really poor. But again, the Roque Espinoza case in which the IJ judge, the immigration judge, told the defendant he had no appeal rights would be even a stronger case than just having this sort of so-called unnamed agent telling him he didn't have that right. So it certainly couldn't get over the Roque Espinoza case. Second point, Your Honors, is that he was not deprived of any judicial review. Again, he waived it. And his only real argument here is that he thinks it would have been futile, but the court has ruled on several occasions that he certainly could have appealed anyways, petitioned the Bureau of Immigration Appeals, could have filed a habeas. There are several answers. Simply put, he wasn't denied appellate or judicial review. He just simply chose not to take it. And finally, there's really no fundamental unfairness. You can't show that there's any due process right that was violated, and the defendants failed to show how he would have been likely to prevail and obtain this 212C relief. It doesn't really work under the factors there. And finally, because he's already now illegally in the country, under the second Sobrano-Reyes case, he really doesn't have the option to now contest it, even if it was sent back for remand. The government believes that this court should affirm the district court's denial of the motion to dismiss and the district court's judgment of conviction and order. As I stated, the defendant cannot satisfy his burden to collaterally attack his prior removal, and he did not exhaust his administrative remedies, waived any rights to appeal, and never pursued them. Due process does not encompass the right to be told of a discretionary relief, and the government asks that this court affirm the district court's rulings. Counsel, if I could just ask you briefly, I had understood the statute, I think it's 8 U.S.C. 1231A5, to in essence say the immigration removal order cannot be revisited for purposes of whether he's removed. Right. Because he re-entered illegally. Correct. I understand that, but I understood the exception, the defense under the Section 1326 criminal statute to indicate that that could be a defense to the crime. Exactly. Right, you're correct. Just to make sure I'm on the same wavelength. Yes, you are correct. Okay. All right. Thank you. Thank you. Thank you, Mr. Rose. Ms. Zardari? Thank you. I really don't have much to add other than what's in my briefs. Again, as I stated when I started, I do think in the context of a collateral challenge to a criminal prosecution, this is evaluated different than if we were, you know, revisiting the original removal hearing. I do think that the distinctions between the facts in this case, where you have somebody who doesn't have counsel, and I believe the hearing was actually done telephonically. You know, again, the record is so old, and I tried to get a transcription of the hearing, and the court doesn't even exist anymore where it took place. It was like in Brandenburg, Florida. So it's very difficult to piece together the facts. But I do think that it's an important distinction between Zambrano-Reyes and the Roque-Espinosa case that those defendants did have counsel. And, you know, in Zambrano-Reyes' case, he actually went through a large part of the appeal and then didn't go any further for whatever reason. But I do think that even though, you know, it's a civil case in the immigration courts, they are almost quasi-criminal because of the consequences. And I think that's being more recognized with some changes in immigration law. You have the Padilla case that stresses the importance of notifying people going through criminal prosecutions of the possibility of deportation. So I don't have anything further. I'll rest on my boots and ask. Could I just ask you one other thing briefly here? Which I guess is really whether this whole issue is properly preserved. What we've got is an affirmative defense, right, under 1326. That's correct. Does that present a jury issue about whether the alien exhausted administrative remedies, was improperly deprived of judicial review, and fundamentally unfair? What we did is we negotiated a conditional plea to preserve it for appeal. I understand that, but this seems to go to the merits. You raised it as a motion to dismiss. I did. And I understand how it might be odd to suggest that these sorts of issues would be suitable for jury decision, but it's an affirmative defense to a criminal statute, criminal charge. That's correct. And it's also a legal issue that I think is suitable for the court to review. Okay. Thank you. Thank you. All right. Thanks to both counsel. Ms. Adari, you have the additional thanks to the court for accepting this appointment. Thank you, Your Honor. All right. Case is taken under advisement.